286 A.2d 877.

SANDRA PERYEA *et al. vs.* COCA-COLA BOTTLING COMPANY OF NEW ENGLAND.

JANUARY 28, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

---

PAOLINO, J. This civil action was brought by Sandra Peryea, individually and as mother and next friend of Michelle Peryea, a minor, against Coca-Cola Bottling Company of New England. The complaint is in two counts. Count I alleges that the plaintiffs sustained personal injuries as a result of the defendant's negligence in the manufacture and packaging of Coca-Cola. Count II alleges that the plaintiffs' injuries resulted from a breach of implied warranty of fitness of the defendant's product for human consumption.[1] In its answer the defendant admitted that it was in the business of preparing and distributing Coca-Cola for sale to the public, but denied the allegations of negligence and breach of warranty.

The case was heard by a justice of the Superior Court sitting with a jury. At the conclusion of the testimony defendant moved for directed verdicts on both counts. The

---

[1]This action was brought under the "Uniform Commercial Code," G. L. 1956, §§6A-2-315 and 6A-2-318, as it then read.

trial justice reserved decision thereon in accordance with Super. R. Civ. P. 50(b). He asked the jury to return separate verdicts on the negligence and warranty counts. On the negligence count the jury returned verdicts for defendant; on the warranty count the jury brought in verdicts for plaintiffs and fixed damages in the amount of $400 for each plaintiff. Thereafter the trial justice granted defendant's motion for directed verdicts on both counts.

The defendant seasonably filed a motion for a new trial on the verdicts returned for plaintiffs on the warranty count. After a hearing thereon the trial justice granted the motion on the grounds that the verdicts for plaintiffs were against the law, and against the evidence and the weight thereof. He also found that the verdicts were grossly excessive. The plaintiffs thereafter filed their notice of appeal to this court.

The questions raised by this appeal relate to the rulings of the trial justice granting defendant's motions for directed verdicts and for a new trial. This appeal involves only the warranty count; the count alleging negligence is not before us.

The evidence consists of the testimony of Sandra Peryea, hereinafter referred to as plaintiff, Mildred Wilde, her neighbor, Frank Taylor, an employee of defendant, the Coca-Cola bottle involved in this case, and certain medical records. We shall discuss only those portions of the evidence which we consider necessary for a resolution of the issues raised by this appeal.

The plaintiff's testimony is in substance the following. On October 4, 1966, at about 3:30 or 4 p.m., plaintiff sent a boy who lived in her house to buy two bottles of Coca-Cola, potato chips and ice cream at a neighborhood market. Upon receiving the bottles she gave one to her friend, Mildred Wilde. The plaintiff opened the other bottle with a silver can opener and drank from the bottle, as did her

daughter, Michelle, aged two. After the child had eaten ice cream from a cup, the plaintiff put some Coca-Cola from the bottle into the cup. The child drank the Coca-Cola and then started to cry. The plaintiff, thinking the child wanted more Coca-Cola, poured more of it into the cup, but the child said "Mommy, I don't want it." She then said to her friend, Mrs. Wilde, that " * * * something feels funny while I'm drinking the soda."

The foregoing incidents happened while plaintiff was sitting on the front steps of her mother's house. Then she went across the street to her own home, placed the bottle on the kitchen table, and prepared the child for bed. When she returned to the kitchen she noticed glass in the bottle. She and her child had consumed a large quantity of the contents of the half-quart bottle. She admitted that she had noticed nothing wrong with the bottle while drinking the Coca-Cola. After she noticed the glass in the bottle she immediately called the Coca-Cola plant and told them she had a bottle with glass in it and that she and her daughter had just drunk from it.

That evening Sandra took Michelle to St. Joseph's Hospital where they were both examined at approximately 9 p.m. The emergency room record on Michelle Peryea states: "No evidence of any laceration or abrasion of mouth or throat." The diagnosis is *Absolutely no evidence of ingestion of glass.* The emergency room record on Sandra Peryea contains identical statements.

The plaintiff's testimony with regard to the effect she and her daughter felt as a result of drinking the Coca-Cola is as follows:

"49 Q What effects did you feel on your person?
A I just couldn't swallow. It was sore, I just couldn't swallow because it was sore, that the only—
"50 Q Could you eat?

A No, I did not eat. I didn't eat for a couple of days. I did not eat.
\* \* \*

"52 Q What complaints did your daughter have?
A She couldn't talk. All she did was cry any time and she didn't want to eat nothing and she didn't want to drink anything. When I went to the hospital I explained it and this is just what happened with my daughter.

"53 Q Directing this to yourself, how long did this condition you described continue?
A For myself?

"54 Q On yourself.
A It was only a couple of days for myself and more so for my daughter.

"55 Q How long for your daughter?
A At least a week or two. It was, I say, two weeks that I went through with her."

On October 6, 1966, plaintiffs were examined by their doctor, Dr. Vincent P. Rossignoli. The plaintiff told the doctor that Michelle drank from a Coca-Cola bottle which contained glass; that the child had been cranky the night following the alleged incident and had been cranky since. The doctor's report states that the oral cavity and teeth and the abdomen were negative; that x-rays of the chest and abdomen, which were taken on October 7, 1966, revealed no evidence of chest or abdominal pathology; that no opaque foreign substances were visualized; that he saw Michelle again on October 11, 1966, when she was cranky, but he did not recommend any treatment or prescribe any medication; that he saw her again on October 15, 1966, when there were no complaints; that a physical examination was negative and Michelle was discharged with a diagnosis of "Question of swallowing foreign body—glass."

Doctor Rossignoli's report on Sandra contains the following information. She told him she noticed something when swallowing. She complained that "She is not eating because she feels everything that goes down." A physical

examination revealed that the oral cavity was negative. X-rays disclosed no evidence of abdominal pathology. On October 11, 1966, she felt better and the doctor recommended no treatment. On October 15, 1966, she had no complaints and was discharged. The final diagnosis was "Question of swallowing foreign body—glass.".

I

The plaintiff's first assignment of error is that the trial justice erred in granting defendant's motion for a directed verdict. In passing on this motion the trial justice found that there was competent evidence in the record to establish a sale of the Coca-Cola by the retailer to plaintiff. He also found that there was enough evidence to go to the jury on the question whether this defendant was the company which had bottled and distributed the bottle involved in this case. These findings are supported by the evidence and require no further discussion. However, notwithstanding the testimony of the plaintiff and of her friend, Mrs. Wilde, he concluded that there was no proof of any injury from ingestion of glass to either of plaintiffs and, therefore, granted defendant's motion for a directed verdict. In reaching this conclusion the trial justice relied on the positive medical evidence contained in the hospital reports which stated that there was no evidence of any laceration or abrasion of mouth or throat and that there was absolutely no evidence of ingestion of glass. He also relied on Dr. Rossignoli's report, discussed above, and the failure of the doctor to establish a causal connection. He concluded that plaintiffs had failed to establish that any injury resulted from any ingestion of foreign bodies.

In urging error plaintiffs argue that the testimony of plaintiff and her friend, Mrs. Wilde, was sufficient to require sending the case to the jury. In so arguing they rely on the plaintiff's testimony that she "couldn't swallow because it was sore"; that she could not eat for a couple

of days; that her daughter could not talk; and that all that her daughter did was cry. The plaintiffs also relied on Mrs. Wilde's testimony concerning what she observed about the condition of the plaintiff and her child.

No citation of authority is needed to support the long-established rule of law in passing on a motion for a directed verdict. If there is any evidence favorable to the party against whom the motion is directed, the trial justice is required to submit the case to the jury. It is true, as the trial justice states in his decision, that the emergency room records and Dr. Rossignoli's reports show that there was no injury resulting from the ingestion of glass. *Compare Hodges* v. *Fuller Brush Co.,* 104 R. I. 85, 242 A.2d 307 (1968). However, for the purposes of determining the correctness of the ruling on this motion, the testimony of plaintiff and Mrs. Wilde cannot be disregarded. The plaintiff testified that she and her daughter drank the beverage in question; that they experienced the effects she mentioned as a result thereof; and that she went to the hospital and later to Dr. Rossignoli. Her testimony was supported to some extent by that of Mrs. Wilde.

This evidence, weak though it may have been, was sufficient to require that the case be submitted to the jury, *see Finocchiaro* v. *Ward Baking Co.,* 104 R. I. 5, 241 A.2d 619 (1968), for it to determine, in the first instance, the question of causation, namely, whether plaintiffs had sustained any injuries as a result of ingesting a foreign substance from the beverage in question. In these circumstances granting of the motion for a directed verdict was error. There is no merit to defendant's contention that plaintiffs have failed to bring their action within the provisions of G. L. 1956, §6A-2-315, as amended, (P. L. 1961, chap. 144, sec. 1) and §6A-2-318 (as enacted by P. L. 1960, chap. 147, sec. 1). *Finocchiaro* v. *Ward Baking Co., supra.*

## II

We address ourselves now to plaintiffs' contention that the trial justice erred in granting defendant's motion for a new trial on the verdicts for plaintiffs. In passing on the motion for a new trial the trial justice, after discussing the pertinent evidence, concluded that the verdicts were against the law and the evidence and the weight thereof. He further found that the verdicts were grossly excessive.

For the plaintiffs to succeed here they must persuade us that in considering the motion for a new trial the trial justice failed to perform his duty as set forth in our cases, *see Barbato* v. *Epstein,* 97 R. I. 191, 193-94, 196 A.2d 836, 837 (1964), or that in so performing his duty he either overlooked or misconceived material evidence or was otherwise clearly wrong. *Handy* v. *Geary,* 105 R. I. 419, 435, 252 A.2d 435, 443 (1969); *Dawson* v. *Rhode Island Auditorium, Inc.,* 104 R. I. 116, 123, 242 A.2d 407, 412 (1968); *Notarantonio* v. *Damiano Bros. Welding Co.,* 101 R. I. 173, 177, 221 A.2d 473, 475 (1966). In our judgment the trial justice correctly performed his duty. In setting aside the verdicts he neither overlooked nor misconceived any material evidence; nor was he clearly wrong. In accordance with our rule his decision will not be disturbed.

The plaintiffs' objection to the granting of the defendant's motion for a directed verdict is sustained and the judgment entered pursuant thereto is reversed. Their objection to the granting of the defendant's motion for a new trial is overruled and the case is remitted to the Superior Court for further proceedings.

*John S. Brunero,* for plaintiffs.

*Higgins & Slattery, Eugene V. Higgins,* for defendant.