Donald KARSHAN and R.J. Kershaw and those certain other Underwriters at Lloyd's subscribing to Policy No. 86H–05–254, Plaintiffs,

v.

MATTITUCK INLET MARINA & SHIPYARD INC., Defendant.

No. CV 90–1135.

United States District Court, E.D. New York.

March 5, 1992.

Nourse & Bowles by Maria L. Alonso, New York City, for plaintiffs.

Bigham, Englar, Jones & Houston by Stacey Tranchina, New York City, for defendant.

WEXLER, District Judge.

In the above-referenced admiralty action, Donald Karshan ("Karshan"), the owner of the 50 foot yacht, "WAVELENGTH," (the "vessel") and R.J. Kershaw and Certain other Underwriters at Lloyd's (collectively "plaintiffs") bring suit against Mattituck Inlet Marina & Shipyard ("Mattituck" or "defendant"), which sold the vessel to Karshan, under a strict product liability theory to recover $89,620.82 in property losses as a result of a fire on the vessel. Now before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is granted.

## I. BACKGROUND

The following facts are not in dispute. On or about April 1, 1985, Donald Karshan, who had purchased four other vessels and sold three in the preceding two years, purchased Wavelength, a 50 foot diesel-powered motor vessel manufactured by Murray Chris–Craft Yachts, Inc. ("Chris Craft") from Mattituck for $480,000. At about noon on April 27, 1987, while the vessel was berthed at Daytona Beach, Florida, a fire started aboard the vessel which resulted in damage costing $89,620.82 to repair; $5,000 was paid by Karshan and the balance by Karshan's insurers, Lloyd's. At

the time of the fire, the vessel had been left unattended by its captain, Gregory Jaeger.

After the fire, two separate surveyors were retained by plaintiffs and/or their representatives to evaluate the fire damage and determine its cause. Both surveryors concluded that a defect within the vessel's starboard shore power connector caused the fire. One of these surveyors, Alex Milligan, further opined that the manufacturer was at fault:

> the fire did originate by reason of a loose connection of ship's electrical wiring conductor in attachment to the installed plug-receptacle. This fault is laid to the installer. (Plug-receptacle unit is permanent installation aboard yacht).

Alex Milligan, Independent Marine Surveyor, Survey Report No. 6632.

On September 7, 1988, plaintiffs filed a lawsuit against Chris–Craft for $84,620.82 in the 12th Judicial Circuit in and for Manatee County, Florida, alleging negligence, strict liability and breach of express warranty. On January 12, 1989, after Chris–Craft filed for Chapter 11 reorganization, plaintiffs filed a proof of claim for the same amount with the Bankruptcy Court in Florida. On April 2, 1990, plaintiffs brought the instant action against Mattituck under a strict products liabilty theory.

Plaintiffs' complaint mentions only "damage to the Vessel and expenses for the repair of said damage...." Plaintiffs' Complaint, paras. 14 and 16. However, in plaintiffs' 3(g) Statement and in an affidavit submitted by plaintiffs' attorney, damage to "entertainment units, furnishings, and other decorator items placed on the Vessel" is also noted. Plaintiffs' 3(g) Statement, para. 2.

## II. DISCUSSION

In *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), the Supreme Court held that in an admiralty case, "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871, 106 S.Ct. at 2302. Defendant argues that this holding applies to the facts of the instant case and it is therefore entitled to summary judgment. Plaintiffs attempt to distinguish *East River* on two grounds: (1) they have alleged damage other than to the product itself; and (2) WAVELENGTH was not purchased in a commercial transaction.

### A. *Other Damage Claim*

■ As noted above, although plaintiffs' complaint sought recovery only for "damage to the Vessel and expenses for the repair of said damage," Plaintiffs' Complaint, para. 16, their 3(g) Statement and their attorney's affidavit note damage to "other property," including "entertainment units, furnishings, and other decorator items placed on the Vessel."[1] Plaintiffs' 3(g) Statement, para. 2. The affidavit refers to a report by Alex Milligan, plaintiffs' Marine Surveyor, which lists, *inter alia*, the following items as damaged in the fire: drapes, towels, stereo speakers, televisions, a video cassette recorder, and various items of furniture. *See* Alex Milligan, Independent Marine Surveyor, Estimate for Repair of Damages dated May 11, 1987. However, Milligan's report fails to differentiate between original equipment included in the purchase price of the vessel and "other property" brought on to the vessel at a later time. In any event, it appears that the major damage caused by the fire was to the vessel itself, not to "other property." *See Veeder v. NC Machinery Co.*, 720 F.Supp. 847, 853 (W.D.Wash.1989) (claim is only for economic loss when "other property damage" appears to be de minimus).

Furthermore, plaintiffs' "other property damage claim" is not supported by affidavits of anyone with personal knowledge as to which property was original equipment and which was not, and therefore does not suffice to raise a genuine issue of material

---

1. The defective product in this case is the Vessel itself, not just the shore power connector which apparently caused the fire. *See Shipco 2295,* *Inc. v. Avondale Shipyards, Inc.,* 825 F.2d 925, 928 (5th Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 701 (1988).

fact for the purpose of defeating a motion for summary judgment. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988); *Beyah v. Coughlin,* 789 F.2d 986, 989–90 (2d Cir.1986). Consequently, the Court will disregard the claim of "other property damage."

## B. *Consumer Transaction Claim*

■ In *East River,* the Supreme Court specifically reserved the issue of whether a "tort cause of action can ever be stated in admiralty when the only damages sought are economic." *Id.* at 871 n. 6, 106 S.Ct. at 2302 n. 6. Plaintiffs contend that the *East River* holding should be limited to commercial settings. Defendant argues that the holding should be extended to cover the facts in the instant case.

### 1. Case Law

The parties cite only two cases in which courts have examined the applicability of *East River* in the context of economic damage in non-commercial settings. Plaintiffs rely on *Sherman v. Johnson & Towers Baltimore, Inc.*, 760 F.Supp. 499 (D.Md. 1990), in which owners of a yacht that caught fire brought suit against the seller, alleging, *inter alia,* a claim sounding in strict products-liability. The court denied the seller's motion to dismiss, limiting the *East River* holding to cases involving commercial relationships.[2] *Id.* at 500.

Defendant, in turn, relies on *Simone v. Genmar Industries, Inc. v. Hatteras Yacht Division,* 1989 A.M.C. 2627 (n.o.r.) (S.D.N.Y.1989). The *Simone* court held that under New York law, a yacht owner would not be able to recover from a remote manufacturer under strict products liability when the only injury was to the vessel itself. It then noted in dicta that under *East River,* the result would have been the same if maritime law had applied. *Id.* at 2629.[3]

### 2. Applicability of East River to Consumer Transactions

Plaintiffs note that in explaining its *East River* holding, the Supreme Court stated:

Contract law, and the law of warranty in particular, is well suited to commercial controversies ... because the parties may set the terms of their own agreements.... Since a commercial situation generally does not involve large disparities in bargaining power, (citation omitted) we see no reason to intrude into the parties' allocation of the risk.

*East River,* 476 U.S. at 872–73, 106 S.Ct. at 2303. In contrast, plaintiffs argue, consumer transactions almost always involve large disparities in bargaining power. Therefore, they conclude, *East River's* holding should be restricted to commercial transactions.

Defendant responds that Karshan had purchased and sold several vessels in the two years before he purchased WAVELENGTH, a yacht costing $480,000 (for which Karshan hired a full-time captain). Consequently, defendant contends, the setting in which the underlying sale took place should be considered "quasi-commercial," due to Karshan's experience and bargaining power.

■ However, when purchasing WAVELENGTH, even a "sophisticated buyer" like Karshan merely signed a pre-printed purchase order form. In any event, Karshan's apparent financial means and general familiarity with the purchase and sales of vessels do not transform him from a consumer to a commercial buyer. *Cf.* U.C.C. § 9–109 (defining "consumer goods" as goods that are "used or bought for use primarily for personal, family or household purposes"); 15 U.S.C. § 2301(1) (same); 15 U.S.C. § 2301(3) ("'consumer'

---

**2.** In addition, the *Sherman* court noted that the owners' claims, based on *their* affidavit, extended to "other property" besides the yacht itself. *Sherman,* 760 F.Supp. at 502–03.

**3.** Defendant also cites *Veeder,* in which a vessel-owner brought various tort claims against the seller of marine engines. *Veeder,* 720 F.Supp. at 850. The court granted summary judgment to the seller under *East River,* but apparently found that the underlying sale was a commercial transaction due to the plaintiff's use of a commercial boat builder as his agent in purchasing the engines. *Id.* at 852. Consequently, the *Veeder* court never confronted the issue of *East River's* applicability in a non-commercial setting.

means a buyer ... of any consumer product").

The Supreme Court in *East River* did not, however, confine its rationale to commercial transactions.[4] *See* Steven R. Swanson, *The Citadel Survives a Naval Bombardment: A Policy Analysis of the Economic Loss Doctrine,* 12 Tul.Mar.L.J. 135, 181 (Fall 1987). To the contrary, it reviewed the history and development of land-based products liability law and used very broad language in its discussion of the need to separate tort and contract actions.

> [I]f this [products liability] development were allowed to progress too far, contract law would drown in a sea of tort. (citation omitted).
>
> ....
>
> Obviously, damage to a product itself has certain attributes of a products-liability claim. But the injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain.

*East River,* 476 U.S. at 866–68, 106 S.Ct. at 2299–2301.

In adopting a narrow view of products liability for admiralty cases (based on the approach of *Seely v. White Motor Company,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965)), the Supreme Court explains that

> [e]ven when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law. (citation omitted).
>
> ....
>
> ... [Broader views] fail[ ] to keep products liability and contract law in separate spheres and to maintain a realistic limitation on damages.

*Id.* at 870–71, 106 S.Ct. at 2302.

This Court also notes that in a maritime context, vessel owners can, and generally do, insure against losses to the value of the vessel, *see id.* at 871, 106 S.Ct. at 2302, and that "[s]ociety need not presume that a customer needs special protection." *Id.* at 871–72, 106 S.Ct. at 2302. Indeed, in the instant case Karshan is insured and, except as to his deductible, the real plaintiff in interest is his insurance carrier. "The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified." *Id.* at 872, 106 S.Ct. at 2302.

Consequently, this Court holds that under admiralty law, cause of action in tort cannot be stated when the only damages alleged are to the product itself.

### III. CONCLUSION

Accordingly, for the aforementioned reasons, defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted.

SO ORDERED.

---

4. Indeed, many of the sources cited in *East River* are relevant to consumer transactions. These include: Restatement (Second) of Torts §§ 395 and 402A (1965) (cited by *East River,* 476 U.S. at 868 n. 3, 106 S.Ct. at 2300 n. 3); U.C.C. §§ 2–313, 2–314 and 2–315 (cited at 476 U.S. p. 872, 106 S.Ct. p. 2303); and *Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 66–67, 207 A.2d 305, 312–13 (1965) (cited at 476 U.S. p. 868 and p. 870, 106 S.Ct. p. 2301 and p. 2302).