[No. B074837. Second Dist., Div. One. July 20, 1994.]

RICHARD Z. LEWINTER et al., Plaintiffs and Appellants, v.
GENMAR INDUSTRIES, INC., Defendant and Respondent.

### COUNSEL

Williams, Woolley, Cogswell, Nakazawa & Russell, Blake W. Larkin and Kevin D. O'Leary for Plaintiffs and Appellants.

Flynn, Delich & Wise, John A. Flynn and James B. Nebel for Defendant and Respondent.

### OPINION

MASTERSON, J.—Richard and Marion Lewinter (plaintiffs) appeal from the summary judgment entered in favor of Genmar Industries, Inc. We affirm.

### BACKGROUND

In 1989, plaintiffs purchased a used 61-foot motor yacht from a private party for recreational use. On March 14, 1989, while plaintiffs were at sea, the yacht experienced a catastrophic hull failure allegedly caused by defective lamination. The damaged yacht did not sink, but was taken ashore for repairs.

On March 13, 1992, plaintiffs filed a complaint against Genmar, the manufacturer of the yacht. Therein, plaintiffs asserted causes of action for negligence, strict liability, and intentional and negligent misrepresentation.

On November 6, 1992, Genmar filed a motion for summary judgment. Genmar argued that this case was governed by admiralty law and, relying on such law as set forth in *East River S.S. Corp.* v. *Transamerica Delaval, Inc.* (1986) 476 U.S. 858 [90 L.Ed.2d 865, 106 S.Ct. 2295] (*East River*), urged that a manufacturer could not be liable in tort where only economic damages to the yacht were sustained. The summary judgment motion was granted on January 8, 1992, and a judgment in favor of Genmar was entered on February 3, 1992.

## ISSUES

Plaintiffs assert that this case is neither subject to admiralty law nor governed by the holding in *East River*.

## DISCUSSION

### 1. *Admiralty Jurisdiction*

■ Over the years, the United States Supreme Court has developed two tests to determine whether a particular action is governed by admiralty law. Under the first test, known as the "locality" test, "[e]very species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." (*The Plymouth* (1866) 70 U.S. (3 Wall.) 20, 36 [18 L.Ed. 125, 128].)

Dissatisfied with the all-encompassing approach of the locality test, the United States Supreme Court set forth an additional test which must be met in order to invoke admiralty jurisdiction. Under this test, known as the "nexus" test, "the wrong [complained of must] bear a significant relationship to traditional maritime activity." (*Executive Jet Aviation* v. *City of Cleveland* (1972) 409 U.S. 249, 268 [34 L.Ed.2d 454, 467, 93 S.Ct. 493].)

■ As noted, the hull failure in this case occurred while plaintiffs were navigating the yacht at sea. Plaintiffs do not contest that the locality test is satisfied. Rather, they assert that the facts of this case do not satisfy the nexus test. We disagree.

In *Foremost Insurance Co.* v. *Richardson* (1982) 457 U.S. 668 [73 L.Ed.2d 300, 102 S.Ct. 2654], two pleasure boats collided on navigable waters. ■ In applying the nexus test, the United States Supreme Court acknowledged that "[n]ot every accident in navigable waters that might disrupt maritime commerce will support federal admiralty jurisdiction." (*Id.* at p. 675, fn. 5 [73 L.Ed.2d at p. 306].) However, the court held that ". . . when

this kind of potential hazard to maritime commerce arises out of activity that bears a substantial relationship to traditional maritime activity, as does the navigation of the boats in this case, admiralty jurisdiction is appropriate." (*Ibid.*) The court further held that the fact that these were not commercial boats was inconsequential to the potential effect upon maritime commerce. The court stated: "Although the primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce, . . . [t]he federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually *engaged* in commercial maritime activity. This interest can be fully vindicated only if *all* operators of vessels on navigable waters are subject to uniform rules of conduct. . . . The potential disruptive impact of a collision between boats on navigable waters, when coupled with the traditional concern that admiralty law holds for navigation, compels the conclusion that this collision between two pleasure boats on navigable waters has a significant relationship with maritime commerce." (*Id.* at pp. 674-675 [73 L.Ed.2d at p. 306], original italics, fn. omitted.)

██ Plaintiffs attempt to distinguish *Foremost* by arguing that the damage to their "yacht was not caused by any traditional maritime activity [such as navigation]. The defective lamination and tabbing of the yacht occurred during the land-based construction of the vessel." Plaintiffs improperly focus on the specific cause of the damage to their yacht rather than on the potential disruptive effect a severely damaged yacht could have on maritime commerce. Plaintiffs' approach has been expressly rejected by the United States Supreme Court in *Sisson* v. *Ruby* (1990) 497 U.S. 358 [111 L.Ed.2d 292, 110 S.Ct. 2892]. There, a washer/dryer unit aboard a noncommercial yacht which was docked at a marina caught fire and burned down the marina. In rejecting the argument that the potential effect upon maritime commerce was minimal because there were no commercial vessels docked at the marina at the time of the fire, the court stated: "This argument misunderstands the nature of our inquiry. We determine the potential impact of a given type of incident by examining its general character. The jurisdictional inquiry does not turn on the *actual* effects on maritime commerce of the fire on Sisson's vessel; nor does it turn on the particular facts of the incident in this case, such as the source of the fire or the specific location of the yacht at the marina, that may have rendered the fire on the [vessel] more or less likely to disrupt commercial activity. Rather, a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity. Here, the general features—a fire on a vessel docked at a marina on navigable waters—plainly satisfy the requirement of potential disruption to commercial maritime activity." (*Id.* at p. 363 [111 L.Ed.2d at p. 300].)

Though we conclude that plaintiffs' approach is improper under *Sisson,* we note that it is not without support. In *Delta Country Ventures, Inc.* v. *Magana* (9th Cir. 1993) 986 F.2d 1260, the injured person dived from a houseboat anchored in shallow waters, struck a submerged object, and became quadriplegic. In determining whether there existed " 'a substantial relationship between the activity giving rise to the incident and traditional maritime activity' " (*id.* at p. 1262), the *Delta* majority defined the relevant activity as "aquatic recreation off a pleasure boat." (*Ibid.*) The court then concluded that ". . . the traditional concepts of admiralty law do not support the assertion of admiralty jurisdiction over the claim of a houseboat guest who sustains personal injuries as a result of his diving off the boat." (*Id.* at p. 1263.)

We suggest that the flaw in the *Delta* majority's reasoning is its focus on the specific details of the activity engaged, rather than on the general type of activity. This approach is contrary to the dictates of the United States Supreme Court as set forth in *Sisson.* As Judge Kozinski stated in his cogent dissent: "The majority . . . define[s] the relevant activity in the most fact-specific way possible—omitting from the description only that the injured victim's initials were D.M. But by focusing on the minutiae of the incident, rather than the 'general conduct from which the incident arose,' the majority ignores what the Court actually did in *Sisson*: It defined the relevant activity as the 'storage and maintenance of a vessel at a marina on navigable waters,' not as doing the laundry or as installing and maintaining household appliances. [Citation.]" (*Delta Country Ventures, Inc.* v. *Magana, supra,* 986 F.2d at p. 1265.)

With the proper test in mind, we turn to the present case and focus on the presence of a severely damaged vessel on navigable waters. The potential impact upon maritime commerce due to this type of an obstruction is obvious. ▮▮▮ Accordingly, we hold that this case falls under admiralty jurisdiction.[1]

## 2. *East River*

As noted, plaintiffs contend that even if the case is subject to admiralty law, it is not governed by the articulation of such law as set forth in the *East*

---

[1]Plaintiffs reference Simone v. Genmar Industries, Inc. (S.D.N.Y. 1989, No. 88 Civ. 0604 (GLG) [1989 AMC 2627]), which held to the contrary. However, cases which have not been officially published, though accessible through computerized data bases or specialty digests such as American Maritime Cases, may neither "be cited [n]or relied on by a court or a party . . . ." (Cal. Rules of Court, rule 977(a); *ACL Technologies, Inc.* v. *Northbrook Property & Casualty Ins. Co.* (1993) 17 Cal.App.4th 1773, 1783, fn. 34 [22 Cal.Rptr.2d 206] [extending rule 977(a) to unpublished federal cases].)

*River* case. They say this is so since: (a) they did not purchase the yacht in a commercial transaction; (b) they sustained damage other than to the yacht itself; and (c) they sought recovery for Genmar's alleged negligent failure to warn of the defective construction of the yacht.

### a. *Commercial Versus Consumer Transactions*

■ *East River* involved a manufacturer's potential liability in tort because of defective yachts it had manufactured for a commercial customer. So on its face, the *East River* doctrine is limited to commercial transactions.[2] However, the Supreme Court's rationale for its decision was not so limited, as has been noted by several courts and commentators. For reasons hereinafter stated, we join the group which concludes that the *East River* doctrine is equally applicable in the consumer context.

In reaching its conclusion, the *East River* court traced the development of products liability law. The court pointed out that, where a product injures a person, the sound public policy of ensuring safety requires that the manufacturer be held liable in tort. However, "[w]hen a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." (476 U.S. at p. 871 [90 L.Ed.2d at p. 877].) Protection against such losses can be insured and the cost of imposing tort liability in such circumstances would impose an unjustified increased cost to the public. "Thus, both the nature of the injury and the resulting damages indicate it is more natural to think of injury to a product itself in terms of warranty." (*Id.* at p. 874 [90 L.Ed.2d at p. 879].) Finally, the court noted that limiting the remedy in such cases to an action in warranty "has a built-in limitation on liability, whereas a tort action could subject the manufacturer to damages of an indefinite amount." (*Ibid.*) Such an extension of liability would be both unwise and unfair.

We are supported in our view that the *East River* doctrine is applicable to consumer transactions by the holding of the district court in *Karshan* v. *Mattituck Inlet Marina & Shipyard Inc.* (E.D.N.Y. 1992) 785 F.Supp. 363. There the court commented: "The Supreme Court in *East River* did not, however, confine its rationale to commercial transactions. [Citation.] To the contrary, it reviewed the history and development of land-based products liability law and used very broad language in its discussion of the need to separate tort and contract actions." (785 F.Supp. at p. 366.) After further noting that the United States Supreme Court had "adopt[ed] a narrow view

---

[2] Indeed, in *East River*, the Supreme Court specifically reserved the issue of "whether a tort cause of action can ever be stated in admiralty when the only damages sought are economic." (476 U.S. at p. 871, fn. 6 [90 L.Ed.2d at p. 877].)

of products liability for admiralty cases" and that "in a maritime context, vessel owners can, and generally do, insure against losses to the value of the vessel" (*ibid.*), the *Karshan* court held that the *East River* doctrine is applicable to consumer transactions.

Furthermore, the need for uniformity in decisions regarding admiralty law compels the conclusion that commercial and consumer transactions be treated alike. Although the issue in *Foremost Insurance Co.* v. *Richardson, supra,* 457 U.S. 668, was whether the case was subject to admiralty jurisdiction, the Supreme Court's language has bearing on the issue before us. There, the court stated: "The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually engaged in commercial maritime activity. This interest can be fully vindicated only if *all* operators of vessels on navigable waters are subject to uniform rules of conduct." (*Id.* at pp. 674-675 [73 L.Ed.2d at p. 306], original italics, fn. omitted.)

For the foregoing reasons, we conclude that the *East River* doctrine is equally applicable to commercial and consumer transactions. (See *Stanton* v. *Bayliner Marine Corp.* (1993) 123 Wn.2d 64 [866 P.2d 15, 24]; *Karshan* v. *Mattituck Inlet Marina & Shipyard Inc., supra,* 785 F.Supp. 363; Swanson, *The Citadel Survives a Naval Bombardment: A Policy Analysis of the Economic Loss Doctrine* (1987) 12 Tul. Mar. L.J. 135, 181.)[3]

b. *Other Damages*

Plaintiffs further assert that the *East River* doctrine is inapplicable since they sustained damage to more than just their yacht. They claim to have lost personal property which was not part of the yacht's original inventory and, although no one was physically injured, to have had their safety threatened.

We note that, in their complaint, plaintiffs did not specifically allege that they had sustained damage to personal property. Rather, they merely alleged that they had "been damaged in an amount in excess of the jurisdictional minimum of [the superior] Court." Damage to personal property was not raised until Richard Lewinter filed a declaration in opposition to Genmar's summary judgment motion. Therein, he stated: "[A]s a result of the hull failure, the yacht sustained structural damage, ruined carpeting, ruined bedding in the V bunk, wear and tear on the generators, and damage to items of personal property not part of the boat's original inventory."

---

[3] Only one published case has drawn a distinction between commercial and consumer transactions in the context of this case. In *Sherman* v. *Johnson & Towers Baltimore, Inc.* (D.Md. 1990) 760 F.Supp. 499, 501-502, the court held that the rationale of *East River* precludes application of its holding to consumer transactions. As stated above, our reading of *East River* compels us to hold that its rationale applies to both consumer and commercial transactions.

Without greater specificity, it would appear that the damaged items of personal property which were not part of the yacht's original inventory can only be classified as de minimis. It has been held that where the "other property damage" appears to be de minimis, the essence of the claim is only for economic loss. (*Veeder* v. *NC Machinery Co.* (W.D.Wn. 1989) 720 F.Supp. 847, 853.)

More importantly, and contrary to plaintiffs' argument, the fact that they have sustained damage to personal property does not mean that they are entitled to recover in tort for both the personal property and the yacht. Rather, when such damages are properly pleaded, the plaintiff is only entitled to recover for the value of the damaged personal property. (*Nicor Supply Ships Associates* v. *General Motors* (5th Cir. 1989) 876 F.2d 501, 506; *Stanton* v. *Bayliner Marine Corp.*, *supra*, 866 P.2d at p. 24.) To hold otherwise would make the plaintiffs' recovery for the economic loss to the ship dependent on the fortuitous circumstance of whether other property was also damaged. Such a capricious rule would nullify the *East River* doctrine.

c. *Negligent Failure to Warn*

Plaintiffs also allege that this case is not governed by the *East River* doctrine because, unlike the plaintiffs in that case, they are seeking to recover for the failure to warn of a postmanufacture discovery of a defect.[4]

Initially, we note that in their complaint plaintiffs merely alleged that Genmar "fail[ed] to give adequate warnings as to the use of the Yacht in that the deck of the Yacht was improperly laminated to the hull, and the Yacht failed to perform as safely as an ordinary consumer might expect because the hull sustained catastrophic failure under normal conditions." Nowhere in the complaint is the failure to warn tied to a postmanufacture discovery of such defect.  ▆  In ruling on a summary judgment motion, the issues which are material are limited to the allegations of the complaint. (*FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508].) A party cannot raise new issues of materiality merely by submitting a declaration in opposition to the summary judgment motion. (*Robinson* v. *Hewlett-Packard Corp.* (1986) 183 Cal.App.3d 1108, 1131-1132 [228 Cal.Rptr. 591].)

---

[4]Plaintiffs acknowledge that the *East River* doctrine has been applied to a failure to warn of a defect which was known at the time the product was manufactured. (*Nicor Supply Ships Associates* v. *General Motors.*, *supra*, 876 F.2d at p. 504.) However, the *East River* doctrine has been held inapplicable to a failure to warn of a defect which is discovered after the product has been manufactured. (*Miller Industries* v. *Caterpillar Tractor Co.* (11th Cir. 1984) 733 F.2d 813, 818 [81 A.L.R.Fed. 163]; *McConnell* v. *Caterpillar Tractor Co.* (D.N.J. 1986) 646 F.Supp. 1520, 1526.)

Furthermore, there was no evidence presented to the trial court which indicated that Genmar had discovered the defect after the yacht had been manufactured. Indeed, in their brief plaintiffs state that "[i]t is presently unknown at what point in time [Genmar] learned of the errors in its manufacturing methods resulting in defects in this yacht." ■ However, plaintiffs assert that they could have produced this evidence had the trial court granted their motion to compel discovery before it ruled on Genmar's summary judgment motion. Since plaintiffs failed to request a continuance of the hearing on the summary judgment motion for the purpose of conducting additional discovery (Code Civ. Proc., § 437c, subd. (h)), they have waived any objection to the trial court having ruled on the summary judgment motion before it decided their motion to compel.[5]

Simply stated, plaintiffs could not defeat summary judgment on this basis without presenting some evidence that Genmar had discovered a defect after the yacht had been manufactured.

### DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Ortega, J., concurred.

---

[5]Once the trial court ruled in favor of Genmar on the summary judgment motion, the motion to compel was rendered moot.