241 A2d 619.

MARY FINOCCHIARO *vs.* WARD BAKING COMPANY.

MAY 6, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

6

Powers, J. This is a civil action to recover damages for the alleged breach of an implied warranty that a loaf of bread sold to the plaintiff was reasonably fit for human consumption. It was commenced July 2, 1963, by a writ

of summons[1] in an action of assumpsit, created by sections 315 and 318 of chapter 2 of title 6A of G. L. 1956, as amended, known and cited as the Uniform Commercial Code.

The case was tried to a superior court justice sitting with a jury which returned a verdict for defendant. A judgment was accordingly entered and within the time provided by rule 59 of the superior court rules of civil procedure, plaintiff moved for a new trial. After a hearing thereon, the trial justice granted plaintiff's motion and from that order defendant seasonably claimed an appeal to this court. In its appeal, defendant also assigns as error a ruling of the trial justice denying its motion for a directed verdict.

Several of the ultimate facts are not in dispute. They establish that on or about June 27, 1962, plaintiff purchased a loaf of white bread at a chain-store market in Providence. The bread in question was baked, sliced, packaged[2] and sold by defendant to the market for sale to the public. At least one slice of the loaf in question was found by plaintiff to contain a discoloring substance which had been baked into the bread. An analysis of a part of the slice in question made at a laboratory maintained by defendant established that this substance "'* * * consisted of hard, greasy, dried dough which had apparently been baked in a bread type product. These particles originated in a bearing or other mechanical part of equipment used in machining the dough prior to baking."

The plaintiff testified that she had made three sandwiches and had eaten two bites of one sandwich when she was interrupted by the doorbell. She further testified that the

[1]Although this action was commenced prior to January 10, 1966, the effective date of the superior court rules of civil procedure, the case was not tried until January 1967.

[2]The plaintiff's declaration alleges, and her testimony supports her allegation, that "Said bread was sold to the plaintiff in a sealed package." No contention is made that, as packaged, the bread was not sold in a sealed container within the meaning of §6A-2-315, as amended.

bread did not taste right and that while answering the doorbell she felt something was wrong. Returning to finish the sandwich, on picking it up she noticed the bottom slice for the first time and discovered the discoloration. This, she testified, nauseated her.

She then testified in detail as to how she thought the substance to be rat fecal, which conviction led her to "see" rats and mice running around dishes and food, and on the bed clothes. She described how she had attempted to shake them off the bed clothes on awaking, and how she had heard them hit the floor. This condition, it is her testimony, lasted for months, causing her to consult and be treated by two doctors, and further causing her to incur medical expenses and loss of income by reason of her inability to work.

Her attorney testified and established that plaintiff had turned over to him what remained of the uneaten slice of bread and that he in turn delivered it to a representative of defendant. The plaintiff's attorney further testified that black particles appeared if the bread were broken open and could be seen if the bread were held up to the light.

The chemical analysis report of defendant's laboratory was introduced by plaintiff through an employee of defendant while that individual was testifying under the statute. Called later as defendant's witness, this employee described the mixing of the dough as well as the kneading and baking processes. The thrust of his testimony was to mitigate the significance of bearing grease which, inadvertently getting into the bread at some stage, was subjected to a temperature of some 480 degrees during baking.

Doctor Thomas L. Greason, an admittedly eminent medical doctor and psychiatrist, one of the two doctors to treat plaintiff, testified on her behalf. He acknowledged that plaintiff's symptoms were extreme, but insisted that they were real to her. Her experience with the bread, he testified, brought on a severe phobic fear state which, however,

responded to treatment and reached a plateau in 1964. Asked if in his opinion the bread was reasonably fit for human consumption, he stated that it was not. He added that one would have to say it was unwholesome.

Doctor John J. Sheehan, also recognized as an eminently competent doctor, testified that he had examined plaintiff at defendant's request. He stated that plaintiff told him that she had eaten none of the bread. It was his opinion that bearing grease was not deleterious to health and that the bread purchased by plaintiff was reasonably fit for human consumption. He admitted that he did not know the constituents of "bearing grease." Counsel for plaintiff then asked if he would be willing to eat a mouthful of such grease. Doctor Sheehan replied, "This isn't the - -," at which point counsel interrupter with "Yes or no, doctor?" and Dr. Sheehan replied, "Yes, I would."

Further, Dr. Sheehan also testified that he imagined he had at some time eaten bearing grease on bread, but conceded that the effect could vary as to individuals and that the absence of an adverse effect on him did not mean that it might not be otherwise with plaintiff.

Albeit necessarily summarized, such was the state of the evidence on which the trial justice denied defendant's motion for a directed verdict.

In support of its contention that this denial constitutes prejudicial error, defendant makes two arguments. They are first, that there is no evidence or reasonable inference to be drawn therefrom by which the jury could find that the bread was not reasonably fit for human consumption, and secondly, that the evidence establishes an absence of privity between plaintiff and defendant. We shall consider these arguments inversely.

It has been the rule in this jurisdiction that breach of an expressed or implied warranty cannot be the basis of an action sounding in contract by one not privy to the warranty. *Lombardi* v. *California Packing Sales Co.*, 83 R. I.

51, 112 A.2d 701; *Henry v. John W. Eshelman & Sons,* 99 R. I. 518, 209 A.2d 46. However, with the enactment of P. L. 1961, chap. 144, sec. 1, now G. L. 1956, §6A-2-315, as amended, the legislature provided for a specified implied warranty, extending from the manufacturer to third party beneficiaries. The cited section provides:

> "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose. As to foodstuffs or drinks sold for human consumption in sealed containers, there is an implied warranty that the goods shall be reasonably fit for such purpose, and such warranty shall extend from the seller and the manufacturer or packer of such goods to the person or persons described in §6A-2-318 of this chapter."

The third party beneficaries to whom such manufacturer's implied warranty extends are set forth in P. L. 1960, chap. 147, sec. 1, now §6A-2-318. It provides:

> "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

It is defendant's argument that a literal reading of §6A-2-318 does not include plaintiff as a purchaser of the bread from the market among those to whom the implied warranty of defendant as manufacturer or packer is made applicable by §6A-2-315, as amended. This argument acknowledges that bread being food there is an implied warranty from defendant to those in plaintiff's household and guests in certain cases as to its reasonable fitness for human consumption, but that such warranty does not include

plaintiff. The statute being in derogation of the common law, defendant urges, its provisions should be strictly construed, citing *Gaspee Cab Inc.* v. *McGovern*, 51 R. I. 247, 153 A.870.

Acknowledging the validity of the cited rule in an appropriate case, we do not perceive that there is call for its application here. Indeed, a decisional modification of the requirement of privity, at least as to the implied warranty created by §6A-2-315, as amended, could not be termed an unheralded departure by this court, when one considers the implications of the concurring opinion in *Henry, supra*.

However, the striking down of the privity requirement theretofore applicable to a litigant occupying the position of the instant plaintiff was accomplished by the legislature through the clear intendment of §6A-2-315, as amended. Prior to its enactment, there was an implied warranty of the immediate seller to his purchaser and §6A-2-318 extended to the third party beneficiaries named in that section the same legal rights enjoyed by the purchaser. Clearly then, in striking down the privity requirement as to manufacturers and packers, the legislature intended the implied warranty of "reasonably fit for human consumption" to embrace all persons who previously had recourse to the immediate seller. This inclusiveness by reference is somewhat similar to that employed in insurance policies with regard to the named insured. We find defendant's argument as to lack of privity without merit.

The defendant's principal argument, namely, the absence of evidence from which the jury could have found that the bread was not fit for human consumption, goes to substance rather than statutory terminology, but even so, lacks merit. It is the gravamen of plaintiff's complaint, as alleged in her declaration, that the bread contained "* * * a deleterious substance resembling mice fecal * * *," which when seen by plaintiff who had eaten some of the bread, resulted in serious illness, to her damage. The defendant argues that

the evidence establishes that the discoloration regarding which plaintiff testified was brought about by the baking into the bread of particles of hard, greasy, dried dough, which "* * * particles originated in a bearing or other mechanical part of equipment used in machining the dough prior to baking."

Continuing, defendant argues that there is no evidence that the particles in question rendered the bread not reasonably fit for human consumption. We are at a loss to understand this latter argument. While Dr. Sheehan, asked to assume that the bread contained bearing grease, testified categorically that such lubricant was not harmful and would not make the bread not reasonably fit for human consumption, Dr. Greason testified that the substance was unwholesome and that the bread was not reasonably fit for human consumption. If, therefore, the issue of fact to be considered by the jury was whether grease used to lubricate a bearing or other machine parts was a substance which would render the bread not reasonably fit for human consumption, there was Dr. Greason's testimony from which the jury could have found in favor of plaintiff. No citation of authority is necessary for the proposition that if there is any evidence from which the jury could find adversely to the movant, a trial justice has no alternative but to submit the case to the jury.

Moreover, defendant misconceives the applicable rule in an action for an alleged breach of an implied warranty that food as sold is reasonably fit for human consumption. When that question turns on the presence in food of a substance not normally used in its preparation, the courts have resorted to various tests in determining whether such substance renders food not reasonably fit for human consumption. Some states, such as California, Louisiana, North Carolina, and Massachusetts, adopt the "foreign-natural"

substance test.[3] Under this rule, if it is established as a fact that the food sold contained a foreign substance, then there is a breach of the implied warranty as a matter of law. If, on the other hand, it is established as a fact that the substance was "natural," such as a fish bone in fish chowder, *Webster, supra,* or a fragment of a chicken bone in a chicken pie, *Mix* v. *Ingersoll Candy Co.,* 6 Cal. 2d 674, 59 P.2d 144, then as a matter of law, there is no breach of the implied warranty.

Other jurisdictions, such as Wisconsin, Pennsylvania, Maryland, and New York, have adopted what is referred to as the "reasonable expectation" test.[4] This rule calls for submitting to the trier of fact the question of whether the substance found is such as a purchaser would reasonably guard against, notwithstanding that the substance was not a normal ingredient. It is somewhat akin to the "natural" substance test as applied in some jurisdictions. The Oregon court in *Hunt* v. *Ferguson-Paulus Enterprises,* 243 Ore. 546, 415 P.2d 13, declined to make a choice between the two tests on the facts of the case before it. There, a cherry pie contained a cherry stone and the trial justice, applying the reasonable expectation test, found as a fact that the plaintiff might reasonably have expected to find in a cherry pie so natural a substance as a cherry stone. There being no question of a foreign substance, the Oregon Supreme Court affirmed, holding, in effect, that as to natural substances the issue presented was a mixed question of law and facts. In thus rejecting by implication the rule

---

[3]*Silva* v. *F. W. Woolworth Co.,* 28 Cal. App. 2d 649, 83 P.2d 76; *Musso* v. *Picadilly Cafeterias, Inc.* (La. App.), 178 So. 2d 421; *Adams* v. *Great Atlantic & Pacific Tea Co.,* 251 N. C. 565, 112 S.E.2d 92; *Webster* v. *Blue Ship Tea Room, Inc.,* 347 Mass. 421, 198 N.E. 2d 309.

[4]*Betehia* v. *Cape Cod Corp.,* 10 Wis. 2d 323, 103 N.W. 2d 64; *Bonenberger* v. *Pittsburgh Mercantile Co.,* 345 Pa. 559, 28 A.2d 913; *Bryer* v. *Rath Packing Co.,* 221 Md. 105, 156 A.2d 442; *Varone* v. *Calarco,* 22 Misc. 2d 1085, 199 N.Y.S. 2d 755.

14

that the presence of a natural substance is not a breach of the implied warranty as a matter of law, the court pointed out that there is a distinction to be made between a chicken bone found in roast chicken and a chicken bone found in a sliced chicken sandwich; the distinction being that a chicken bone is a natural substance in a chicken dish and that it might reasonably be expected to be found in roast chicken or a chicken pie but perhaps not in a sliced chicken sandwich.

In the case at bar, we are likewise not called upon to choose between the two tests. If recourse be had to the "foreign-natural" test, it is readily apparent that bearing grease or any other lubricant employed to minimize friction between the moving parts of machinery is a foreign substance in a loaf of bread purchased for human consumption; but there remains as a fact question whether plaintiff sustained damages. On this latter question in the instant case, there was the testimony of plaintiff and Dr. Greason that she did; whereas Dr. Sheehan testified that plaintiff told him she had eaten none of the bread and it was his opinion that her health was unimpaired.

On the other hand, if recourse be had to the "reasonable expectation" test, it was a fact question of whether the bearing grease, as to the presence of which there is no dispute, was a substance which plaintiff should reasonably be prepared to guard against under all the circumstances. Further, were the jury to find the acknowledged substance not reasonably to be anticipated, there remained the fact question of whether damages resulted.

Clearly then, applying either test, the trial justice would not have been warranted in granting defendant's motion for directed verdict.

We turn now to defendant's final assignment of error, namely, that the trial justice erred in granting plaintiff's motion for a new trial. In support thereof, it contends that the trial justice misconceived the evidence and, having

done so, his findings are not entitled to the persuasive weight ordinarily accorded, citing *Meehan* v. *Petroleum Heat & Power Co.*, 76 R. I. 178, 68 A.2d 77, and *Anderson* v. *Johnson*, 59 R. I. 241, 195 A.240. It follows, defendant then argues, that this court applies the appellate rule to determine whether the evidence greatly preponderates against the verdict, citing *Rustigian* v. *Molloy*, 95 R. I. 330, 186 A.2d 724. It then submits that our independent examination of the evidence will establish that the evidence does not so preponderate.

We are in full accord with the rules on which defendant relies and the cases cited in support thereof. We cannot agree, however, that the trial justice misconceived the evidence in the case at bar. The defendant bases this contention on language taken out of context from the trial justice's decision on the motion for a new trial. His decision when fully read discloses that he passed on the weight of the evidence and the credibility of the witnesses, gave no weight to the testimony of Dr. Sheehan, and having performed his duty in accordance with the rule fully set forth in *Barbato* v. *Epstein*, 97 R. I. 191, 196 A.2d 836, concluded that as to a breach of the warranty, proximate cause and damages, the evidence fairly preponderated against the verdict. Having moved out Dr. Sheehan's testimony and pointed to probative evidence which the record establishes he did not misconceive, it was the trial justice's duty to grant a new trial, his more sophisticated judgment telling him that the jury's verdict was wrong. *Charpentier* v. *Potvin*, 90 R. I. 388, 158 A.2d 577.

The defendant further contends, however, that the granting of a new trial was erroneous for the reason that the trial justice departed from the law that he gave to the jury, contrary to the rule enunciated in *Roland Bileau Transp. Co.* v. *Lodie Brien, Inc.*, 100 R. I. 723, 219 A.2d 401. It rests this contention on the trial justice's instructions as follows: "* * * if Mrs. Finocchiaro is to have your verdict,

she has the burden of proving by the fair preponderance of the evidence each and every essential part of her case. * * * Now, Mrs. Finocchiaro's case essentially is this: * * * #3, that it was not —that bread that she bought or some part of it was not reasonably fit for human consumption * * *."

Having called our attention to the foregoing portion of the trial justice's instruction, defendant then argues that the trial justice failed to follow his instructions when he concluded, from the evidence as he viewed it, that the bread was not reasonably fit for human consumption. We fail to understand how the trial justice's reliance on evidence which he concluded the jury must have ignored constitutes a failure to adhere to the law as given to the jury, when the evidence on which he relied had a probative relationship to plaintiff's burden as he stated that burden to be.

Specifically charging the jury as to what plaintiff was required to prove on the issue of reasonably fit for human consumption, the trial justice stated, "Now, in order for it to be fit for human consumption, the bread, all of the bread, the whole contents of that package, it was required to be of a merchantable quality, the kind that ordinarily merchants offer for sale and it must be wholesome; that is, it must itself promote the health and wellbeing."

It was precisely the burden as thus stated against which the trial justice independently weighed the evidence and passed on credibility. We cannot agree that in passing on the motion for a new trial, the trial justice did not follow the law that he gave to the jury.

The defendant's appeal is denied and dismissed, and the order appealed from is affirmed.

*Dick & Carty, Joseph E. Marran, Jr.*, for plaintiff.

*Jordan, Hanson & Curran, A. Lauriston Parks*, for defendant.