IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 16, 2008

Charles R. Fulbruge III
Clerk

No. 07-30885

TURBOMECA, S.A.,

Plaintiff-Appellee,

v.

ERA HELICOPTERS LLC,

Defendant-Appellant,

Consolidated with No. 07-30902

ERA HELICOPTERS LLC; UNITED STATES AVIATION
UNDERWRITERS, INC. as Managers on behalf of United States Aircraft
Insurance Group,

Plaintiffs-Appellants,

v.

TURBOMECA, a Division of Labinal; EUROCOPTER SAS,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:06-CV-1711
USDC No. 6:07-CV-787

Before PRADO, ELROD, and HAYNES, Circuit Judges.

ELROD, Circuit Judge:

The sole issue on appeal is whether this circuit should recognize a post-sale negligence exception to the maritime "economic loss doctrine" established in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986). We decline to do so and affirm the district court's judgment dismissing the tort claims alleging a post-sale failure to warn of a pre-sale product defect.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about May 13, 2005, the pilot of a helicopter operated by Era Helicopters LLC ("Era") experienced engine trouble and made an emergency landing in the Gulf of Mexico, utilizing the helicopter's emergency flotation devices. The pilot and passenger were picked up by a vessel, but the helicopter rolled and inverted during subsequent recovery efforts. The submersion of the aircraft in the salt water rendered the helicopter a total loss.

Related lawsuits were filed in Louisiana and Texas and were ultimately consolidated in the Western District of Louisiana.[1] Era alleged, inter alia, that an engine defect caused its economic losses, which Era sought to recoup from Turbomeca, S.A., the manufacturer of the engine, and Eurocopter SAS, the manufacturer of the helicopter. Era claimed that both Turbomeca and

---

[1] Turbomeca filed suit in the Western District of Louisiana seeking a declaration that it was not liable to Era (the "Turbomeca action"), and that action was consolidated with a lawsuit filed by the sole passenger on the helicopter, Terrance Boutte (whose lawsuit and alleged injuries are not part of this appeal). Era and its insurer, United States Aviation Underwriters, filed a separate action in the Southern District of Texas (the "Era/USAU action") alleging post-sale negligence on the part of Turbomeca and Eurocopter. The Era/USAU action was transferred to the Western District of Louisiana and consolidated with two other cases, although all three cases were later severed. The parties stipulated that the East River doctrine was the central issue in both the Era/USAU action and the Turbomeca action, and the district court thus decided the issue on one set of briefing. The parties agreed to dismiss all claims sounding in warranty or contract in order to expedite entry of final judgment. The parties requested and were granted consolidation of the two appeals in this court.

Eurocopter were responsible for monitoring the reliability of their products, for investigating the causes of catastrophic failures, and for publishing and updating data used by operators in the maintenance and repair of helicopters and their engines. Era accused both Turbomeca and Eurocopter of "post-sale negligent acts or omissions," including the post-sale failure to warn of a pre-sale defect.

The defendants sought dismissal of the tort claims, contending that the case falls under the economic loss doctrine of East River, which restricts a maritime plaintiff to warranty remedies when a defective product damages only itself. The plaintiffs, however, argued that a post-sale negligence exception to East River should be recognized.[2] The district court agreed with the manufacturers, entering judgment in favor of Turbomeca and Eurocopter and holding that "the great weight of federal jurisprudence considering an exception for post-sale negligence . . . understand[s] the East River Doctrine to be a broad, unadulterated bar precluding all negligence claims for economic loss arising out of damages to a defective product." Bouttee v. ERA Helicopters, L.L.C., 244 F.R.D. 360, 368 (W.D. La. 2007). We affirm.

---

[2] East River does not apply where a defective product damages "other property" in addition to the product itself, Shipco 2295, Inc. v. Avondale Shipyards, Inc., 825 F.2d 925, 928 (5th Cir. 1987), but there is no such claim in this case. The parties do not argue, and the case law does not support, that the helicopter was "other property" that was damaged by the failure of the engine. See, e.g., Petroleum Helicopters, Inc. v. Avco Corp., 930 F.2d 389, 393 (5th Cir. 1991) (affirming summary judgment for defendants on strict products liability and negligent design claims because the helicopter and its emergency float were a single product for purposes of East River, and a defect in a component part that causes damage to a helicopter does not result in damage to "other property").

STANDARD OF REVIEW

This is a consolidated appeal in which the district court granted a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings in one case and a Rule 12(b)(6) motion to dismiss for failure to state a claim in the other case. For both motions, this court's standard of review is de novo, and the well-pleaded facts are viewed in the light most favorable to the plaintiff. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007), cert. denied, Chehardy v. Allstate Indem. Co., 128 S. Ct. 1231 (2008) and Xavier Univ. of La. v. Travelers Cas. Prop. Co. of Am., 128 S. Ct. 1230 (2008).

ANALYSIS

## I. East River Economic Loss Doctrine

The Supreme Court held in East River that a maritime plaintiff may not maintain a tort cause of action against a manufacturer "when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." 476 U.S. at 859, 876. The Court analogized the situation of a defective product damaging only itself to the loss incurred when a product fails to work properly or work at all: "Obviously, damage to a product itself has certain attributes of a products-liability claim. But the injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." Id. at 867-68. The Court concluded that a "manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." Id. at 871.

In arguing for an exception for post-sale negligence, the plaintiffs seize upon a footnote in East River in which the Supreme Court left open the possibility of exceptions: "We do not reach the issue whether a tort cause of

action can ever be stated in admiralty when the only damages sought are economic." Id. at 871 n.6. The bar of East River, however, clearly applies where the injury is to the product alone. The Court reasoned that "[e]ven when the harm to the product itself occurs though an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of his bargain—traditionally the core concern of contract law." Id. at 870. Thus, where a defective product malfunctions and causes damage only to itself, the rule is that a plaintiff can maintain an economic loss claim only under a warranty or contract theory of recovery.

Later, in Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875 (1997), the Supreme Court explained the rationale behind the East River rule:

> The Court [in East River] reasoned that the loss of the value of a product that suffers physical harm—say, a product that destroys itself by exploding—is very much like the loss of the value of a product that does not work properly or does not work at all. In all such cases, the Court held, "contract law, and the law of warranty in particular, is well suited" to setting the responsibilities of a seller of a product that fails to perform the function for which it was intended.

Id. at 879-80 (citations omitted). The Court instructed that "[g]iven the availability of warranties, the courts should not ask tort law to perform a job that contract law might perform better." Id. at 880.

II. Post-Sale Negligence Argument for Exception

Era alleges that all or part of its economic damages were caused by Turbomeca's "post-sale failure to warn of a defect known only to Turbomeca after the sale of the helicopter but before the incident at issue." Era submits that this court should recognize an exception to the maritime East River economic loss doctrine in the case of negligence by the manufacturer that is alleged to have

5

taken place after the manufacture and sale of the product at issue. We decline to do so.

## A.   Decisions in Other Circuits

The Eleventh Circuit—prior to the Supreme Court's decision in East River—held that where physical damage to a ship's engine and attendant costly delays were caused by the manufacturer and the distributor's joint post-sale failure to warn the plaintiffs that known pre-sale engine defects needed correction, the plaintiffs could sue in negligence and were not limited to the recovery of repair costs under the warranty cause of action. Miller Indus. v. Caterpillar Tractor Co., 733 F.2d 813, 818 (11th Cir. 1984). The Eleventh Circuit allowed the purchaser to recover in tort so long as the manufacturer "discovered [the defect] after the engine was already on the market" and "the warranty does not expressly disclaim" liability for negligence. Id. The court reasoned that a post-sale duty to warn of defects:

> goes not to the quality of the product that the buyer expects from the bargain, but to the type of conduct which tort law governs as a matter of social and public policy. To hold otherwise would impermissibly allow a manufacturer who is aware that it has a defective product on the market to hide behind its warranty while the buyer unknowingly uses it.

Id. (citations omitted);[3] but cf. East River, 476 U.S. at 871 ("The tort concern with safety is reduced when an injury is only to the product itself."). Another panel of this court, however, has questioned whether the Miller Industries

---

[3] The Miller Industries decision relied on the former Fifth Circuit opinion in Jig the Third Corp. v. Puritan Marine Insurance Underwriters Corp., 519 F.2d 171, 178-79 (5th Cir. 1975) (holding that unless a warranty expressly disclaims liability for negligence, the plaintiff may recover his damages for negligent design and manufacture even though the only physical damage is to the product itself). Miller Indus., 519 F.2d at 817-18. The holding in Jig the Third, however, was "effectively overruled" by the East River decision in 1986. Shipco, 825 F.2d at 927.

opinion is good law in light of the subsequent East River decision by the Supreme Court. Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH, 524 F.3d 676, 679 n.2 (5th Cir. 2008) ("Miller is also seemingly no longer good law."). We decline to follow Miller Industries.

The Third Circuit, the only federal circuit court to directly address the issue after East River, refused to create an exception to the East River doctrine for post-sale negligence. Sea-Land Serv., Inc. v. Gen. Elec. Co., 134 F.3d 149, 155-56 (3d Cir. 1998), overruling McConnell v. Caterpillar Tractor Co., 646 F. Supp. 1520 (D.N.J. 1986) (recognizing such an exception). In Sea-Land, a defective connecting rod failed and damaged a vessel's engine, and the plaintiff vessel owner raised a negligent failure to warn claim, alleging that the defendant manufacturer had discovered the defect after the sale but prior to the incident. Id. at 151-52. The Sea-Land court rejected the tort claim and found that the East River Court's rationale—that product failures are the types of injuries that are most appropriately remedied in contract rather than in tort—was applicable to the case before it, stating:

> If the damage, resulting from a defect is other than mere economic loss, East River leaves intact all tort-based theories of recovery including, but not limited to, duty to warn.
>
> Where, however, damage from a defect is only to the product itself and is only economic, there is no tort recovery. The policy of economic loss is better adjusted by contract rules than by tort principles. This conclusion is as true for strict liability and negligence cases as it is for failure to warn cases. Thus, a manufacturer may be culpable of a failure to warn, but if the damage is solely to the product itself and is solely economic, there is no tort recovery.

34 F.3d at 155-56 (citing East River, 476 U.S. at 866-68). In applying the economic loss doctrine, the Sea-Land court thus focused on the type of damages

7

actually sustained rather than on when the alleged negligence occurred. The court commented that when the only injury is economic loss, the purchaser and the manufacturers "can set the terms of their expectations through negotiations, contract provisions, price adjustments, and insurance." Id. at 155.

B.    Fifth Circuit Application

In Nicor Supply Ships Associates v. General Motors Corp., 876 F.2d 501 (5th Cir. 1989), the Fifth Circuit observed that the Supreme Court in East River had not discussed "whether the purchaser of a vessel may recover in tort against the manufacturer for failing to warn of a defect in that product." Id. at 503. The Fifth Circuit refused to allow the purchaser to maintain a tort claim for failure to warn of a defect known at the time of manufacture, commenting on the unfortunate pleading effect such an exception might create:

> Were we to allow Nicor to succeed on its [failure to warn] claim, we would invite all purchasers of self-damaging products that were negligently manufactured but beyond the coverage of the warranty to style their complaints in terms of the manufacturer's negligent failure to warn of a known defect. Permitting recovery on such grounds would frustrate the Supreme Court's plain intention that a manufacturer be liable for the damages a product causes to itself as a result of negligent manufacture only to the extent that the parties have contractually agreed to apportion such liability.

Id. at 504. While noting the "possible exception to East River," as articulated in Miller Industries and potentially left open by footnote 6 of East River, the court determined that the specific facts in Nicor made it unnecessary to decide the issue: "[W]e intimate no opinion concerning whether Nicor would have stated a cause of action had it alleged that General Motors had discovered a defect in the . . . engine after its manufacture." Id. at 505 (emphasis added).

Only one court in the Fifth Circuit has held that the East River doctrine does not apply to allegations of post-sale negligence. See Brown v. Eurocopter S.A., 143 F. Supp. 2d 781, 783 (S.D. Tex. 2001). In the absence of a Fifth Circuit decision on point, the district court in Brown chose to follow the reasoning of the Eleventh Circuit in Miller Industries rather than that of the Third Circuit in Sea-Land. We disapprove the holding in Brown, which was not appealed.

Recently, a panel of this court declined to make an "Erie guess" that Texas would carve out an exception to its state economic loss rule for claims of post-sale negligence based on a defendant's failure to warn of defects discovered after manufacture. The court commented in dicta that:

> Miller is . . . seemingly no longer good law. The United States Supreme Court adopted the economic loss rule in [East River]. Because Miller predates East River, the exception recognized in Miller Industries arguably has little force. This is particularly true in light of the fact that the Court was aware of Miller, having cited it as an example of cases where courts have refused to apply the economic loss rule. If the Court had agreed with the holding in Miller, it presumably also would have distinguished post-sale negligence claims from other negligence claims. Instead, the Court formulated the economic loss rule in broad language that left no room for this distinction.

Mem'l Hermann, 524 F.3d at 679 n.2 (5th Cir. 2008) (citations omitted) (emphasis added). We likewise interpret the East River economic loss rule as a broad bar to tort claims for damage solely to the product itself.

East River unequivocally held that a "manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." East River, 476 U.S. at 871. In explaining its rationale, the Court repeatedly emphasized the nature of the injury rather than the timing of the defendant's conduct. Furthermore, as recognized

in Memorial Hermann, the Court referenced the holding in Miller Industries yet did not distinguish post-sale negligence claims from other negligence claims when pronouncing its broad economic loss rule. Finally, we note that our holding in this case will not remove the incentive for manufacturers to protect the public by warning of defects that may come to their attention because manufacturers will not know ahead of time what type of injuries might result from a known product defect.

We follow the Third Circuit in Sea-Land and decline to recognize an exception to the East River doctrine for post-sale negligent failure to warn claims: "[I]f the damage is solely to the product itself and is solely economic, there [can be] no tort recovery," Sea-Land, 134 F.3d at 156, and the purchaser is restricted to a warranty or contract cause of action under maritime law.

## CONCLUSION

Finding no error in the district court's ruling, we AFFIRM.