### ACE AMERICAN INSURANCE CO.

v.

### GRAND BANKS YACHTS, LTD.

#### Civil No. CCB–07–3366.

United States District Court,
D. Maryland.

Nov. 21, 2008.

---

11. Subject, most certainly, to appellate review.

698

Stephen M. Calder, Charles W. McCammon, Palmer Biezup and Henderson LLP, Philadelphia, PA, for Ace American Insurance Company.

David W. Skeen, Meighan Griffin Burton, Wright Constable and Skeen LLP, Baltimore, MD, Stephen Paul Vanderhoef, Cairncross and Hempelmann PS, Seattle, WA, for Grand Banks Yachts Ltd.

### MEMORANDUM

CATHERINE C. BLAKE, District Judge.

Now pending before the court is a motion for summary judgment filed by defendant Grand Banks Yachts, Ltd. ("Grand Banks") against plaintiff Ace American Insurance Co. ("Ace"). Ace, as subrogee of Robert Mathews and Lindsay Johnson (for convenience "the Mathews"), has sued Grand Banks for damages to a 2003 Grand Banks yacht the Mathews purchased in 2005. Ace seeks recovery in strict product liability and negligence and for breach of express and implied warranties. The issues in this motion have been fully briefed and the parties have been heard. For the reasons stated below, the defendant's motion will be granted.

### BACKGROUND

Robert Mathews and Lindsay Johnson live in Chestertown, Maryland. On September 20, 2005, the Mathews signed a purchase and sale agreement for a 2003 49-foot Grant Banks Eastbay yacht named M/Y OFF ISLAND ("the yacht"). They signed an addendum to that agreement accepting delivery of the yacht on October 12, 2005. Prior to purchasing the yacht, which was moored in Rhode Island, the Mathews inspected the yacht and hired a professional to survey the yacht in Rhode Island. The Mathews purchased the yacht through East Coast Yacht Sales ("ECYS"), a broker located in Portsmouth, Rhode Island and closed on the yacht at ECYS's Portsmouth offices. They took possession of the boat in Rhode Island.

In November 2005, the Mathews set out on a voyage from Rhode Island to return to Maryland aboard the recently purchased yacht. Ace alleges that during that trip the yacht suffered severe damage in the form of "catastrophic failure of a major longitudinal stringer, and detachment ("detabbing") of the interior structural components ... [which] resulted in the helm seat dislodging from under Mr. Mathews, the windshields cracking around him and the window frames separating from the pilot house, and other structural damage." (Pl.'s Opp. to Def.'s Mot. to Dismiss at 1.) Ace further alleges that the damage resulted when defectively manufactured "secondary tabbing materials holding the bulkheads and frames to the hull" failed to function properly. (*Id.* at 2.) Ace does not allege that the Mathews suffered any physical injury during the voyage, nor does it allege that property, other than the yacht itself, was damaged. Pursuant to the Mathews's insurance policy, Ace compensated the Mathews for the approximately $200,000 in damages.

Ace filed the instant lawsuit on December 17, 2007 against Grand Banks seeking damages in excess of $200,000 and asserting three counts in its complaint. Count one contends that Grand Banks was negligent in its design and manufacture of the yacht and, in subsequent pleadings, Ace also asserts Grand Banks was negligent in failing to warn the Mathews of manufacturing defects. Count two is a claim for strict product liability based on the alleged defective manufacture of the yacht. Count three alleges breach of express and implied warranties pursuant to state law and the federal Magnuson–Moss Warranty Act. On April 11, 2008, Grand Banks filed a motion to dismiss Ace's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On August 13, 2008, after a limited period of discovery, Grand Banks filed a supplemental memorandum converting its motion to dismiss to a Rule 56 motion for summary judgment. The court heard oral argument on the summary judgment motion on November 12, 2008.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir.2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## A. Tort Claims

■ There is no dispute that Ace's tort claims are governed by admiralty law. *See Sisson v. Ruby,* 497 U.S. 358, 359, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990) (holding that dispute stemming from damages to a recreational vehicle docked in navigable waters fell within admiralty jurisdiction). "With admiralty jurisdiction comes the application of substantive admiralty law," *East River S.S. Corp. v. Transamerica Delaval,* 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). Ace asserts causes of action in negligence and strict product liability. Grand Banks contends that these claims are barred, because admiralty law does not permit recovery for economic losses where only the defective product itself is damaged.

### i. Negligent Manufacture and Strict Product Liability

In *East River*, the Supreme Court held that under admiralty law, "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871, 106 S.Ct. 2295. Grand Banks argues that this holding applies to consumer transactions as well, while Ace contends that it is limited to the commercial context. Most courts that have considered the issue have held that *East River* applies in the consumer context. *See Somerset Marine, Inc. v. Forespar Prods. Corp.*, 876 F.Supp. 1114, 1116 (C.D.Cal.1994); *Karshan v. Mattituck Inlet Marina & Shipyard, Inc.*, 785 F.Supp. 363, 366 (E.D.N.Y.1992); *Lewinter v. Genmar Indus., Inc.*, 26 Cal.App.4th 1214, 1222, 32 Cal.Rptr.2d 305 (Cal.Ct.App. 1994); *Stanton v. Bayliner Marine Corp.*, 123 Wash.2d 64, 866 P.2d 15, 24 (1993); *see also Marshall v. Wellcraft Marine, Inc.*, 103 F.Supp.2d 1099, 1109 n. 6 (S.D.Ind. 1999) (adopting a case-specific application of *East River* to consumer transaction involving sophisticated parties); *but see Farley v. Magnum Marine Corp., N.V.*, 1995 WL 795711 at *2 (S.D.Fla.1995) (declining to extend *East River* to transaction where parties were in a non-commercial relationship and consumer suffered damage to its personal property). While Judge Nickerson of this district initially declined to extend *East River* to consumer transactions in *Sherman v. Johnson & Towers Balt., Inc.*, 760 F.Supp. 499, 501–02 (D.Md.1990), he subsequently concluded in an unpublished opinion that "in light of the clear consensus of recent admiralty decisions addressing this issue … the *East River* rule must be applied in the non-commercial as well as in the commercial context," *Reliance Ins. Co. v. Carver Boat Corp.*, 1997 WL 714900 at *2 (D.Md.1997).

Courts extending *East River* to the consumer context have noted that the Supreme Court did not confine its reasoning to commercial transactions. *See, e.g., Karshan*, 785 F.Supp. at 366 n. 4 (citing sources in *East River* that are relevant to consumer transactions). Rather, the Court articulated an overriding concern with keeping contract and product liability law separate. *See East River*, 476 U.S. at 866, 106 S.Ct. 2295 (noting that if product liability tort law were left to develop unchecked "contract law would drown in a sea of tort"). After laying out the various land-based approaches to product liability law, the Court in *East River* adopted a rule for admiralty law similar to the majority approach created in *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), reasoning that

> "[t]he distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing its products." When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.

*East River*, 476 U.S. at 871, 106 S.Ct. 2295 (quoting *Seely*, 403 P.2d at 151) (internal citation omitted). Thus, while the Court's holding refers specifically to the "commercial relationship," most lower courts have interpreted *East River* to apply in the consumer context as well.

These courts have pointed to consumer protections in the recreational boating context that support extending *East River* to consumer transactions. Courts have noted that noncommercial buyers of recreational vessels tend to be sophisticated purchas-

ers, thus reducing the risks of inequitable bargaining, even where, as here, the consumer merely signed a pre-printed purchase order form. *See Karshan*, 785 F.Supp. at 365. In *Marshall*, the district court applied *East River* to a consumer transaction where the consumers, like the Mathews, did not purchase their yacht directly from the manufacturer. The court reasoned that even though downstream purchasers are less able to negotiate directly for a warranty, they can factor the absence of a warranty into the purchase price. *Marshall*, 103 F.Supp.2d at 1109 n. 6; *but see Farley*, 1995 WL 795711 at *2 (expressing concern that consumers, particularly downstream purchasers, cannot negotiate for warranties). Moreover, the *Marshall* court stated that where a defective product harms only itself "the public safety concerns animating tort law subside," and in the absence of a warranty, recreational yacht purchasers can, and often do, obtain insurance. *Id.* at 1109 & n. 6 (noting that the downstream consumer's purchase of insurance on the yacht "provid[ed] another reason not to impose tort protections where the risk of loss to the product itself has been allocated in the marketplace"); *see also Karshan*, 785 F.Supp. at 366.

Like the downstream purchaser in *Marshall*, the Mathews obtained insurance on their yacht that covered their economic losses. In light of the relative sophistication of recreational yacht purchasers, the likelihood that non-commercial vessels will be insured, and the general consensus applying *East River*'s broad rationale to the consumer context, the court concludes that *East River* should control in this case.

### ii. Negligent Failure to Warn

■ An issue remains, however, as to whether Ace's negligence claim survives on a failure to warn theory. Ace bases its contention that *East River* does not extend to negligent failure to warn claims, in part, on the Supreme Court's acknowledgment that it "[did] not reach the issue whether a tort cause of action can ever be stated in admiralty when the only damages sought are economic," *East River*, 476 U.S. at 871 n. 6, 106 S.Ct. 2295.[1] Several courts that have considered the issue, however, concluded that *East River* bars a claim for negligent failure to warn. *See Turbomeca v. Era Helicopters LLC*, 536 F.3d 351, 357 (5th Cir.2008) (rejecting post-sale failure to warn cause of action); *Sea–Land Serv., Inc. v. Gen. Elec. Co.*, 134 F.3d 149, 155–56 (3d Cir.1998) (same); *Mays Towing Co. v. Universal Mach. Co.*, 755 F.Supp. 830, 834 (S.D.Ill.1990) (same); *see also Nicor Supply Ships Assocs. v. Gen. Motors Co.*, 876 F.2d 501, 504–05 (5th Cir.1989) (rejecting tort claim for failure to warn of a defect known at the time of manufacture).[2]

1. Ace asserts that *East River* addressed only the availability of a strict liability theory of recovery for a manufacturing defect; however, that contention is incorrect. *See East River*, 476 U.S. at 871, 106 S.Ct. 2295 ("[W]e … hold that a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself.").

2. The only circuit court to adopt Ace's theory is the Eleventh Circuit, which concluded, prior to the Supreme Court's decision in *East River,* that plaintiffs seeking only economic loss as a result of a defective product could state a claim for negligent failure to warn under maritime law, at least where the manufacturer is aware of the defect and the warranty does not expressly disclaim negligence. *Miller Indus. v. Caterpillar Tractor Co.,* 733 F.2d 813, 818 (11th Cir.1984). While the Supreme Court did not expressly overrule *Miller* in *East River*, it did cite *Miller* as an example of cases where courts have refused to apply the economic loss rule. *East River,* 476 U.S. at 863 n. 1, 106 S.Ct. 2295; *see also Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH,* 524 F.3d 676, 679 n. 2 (5th Cir.2008) (noting that *Miller* is seemingly no longer good law in light of *East River*'s broadly worded economic loss rule that did not distinguish the failure to warn

In *Turbomeca*, the Fifth Circuit noted that, in explaining the rationale for its rule, the Supreme Court "repeatedly emphasized the nature of the injury rather than the timing of the defendant's conduct." 536 F.3d at 357; *see also Sea–Land*, 134 F.3d at 155–56 (noting that where damage from a defect is limited to the product itself, "[t]he policy of economic loss is better adjusted by contract rules than by tort principles"). In *Mays Towing*, the district court concluded that plaintiffs cannot circumvent the rule in *East River* by attempting to recover for damages to the product itself by pleading a products liability tort theory not expressly addressed in *East River*. 755 F.Supp. at 834 (citing *Nicor*, 876 F.2d at 503).[3] Similarly, this court concludes that *East River*'s broad rule should encompass a negligent failure to warn cause of action.

Given that *East River* extends to the consumer transaction in this case and encompasses negligent failure to warn, Grand Banks is entitled to summary judgment on the strict liability and negligence claims.[4]

## B. Breach of Warranty Claims

■ Ace claims that Grand Banks breached express and implied warranties under state law and the federal Magnuson–Moss Warranty Act. Grand Banks contends that its express limited warranty does not extend to the Mathews because they are not the first retail owner, and that any claims for breach of implied warranties must fail due to a lack of contractual privity between the Mathews and Grand Banks. It is clear that Ace's express warranty claims fail because the only evidence of any express warranty regarding the yacht is Grand Banks's standard Limited Warranty, which expressly states that it "is extended only to the first retail owner." (Def.'s Mot. Summ. J. Ex. D at 2.) Ace does not contend that Grand Banks made any other express warranties to the Mathews when they purchased the yacht. Thus, the court will grant Grand Banks's

---

negligence claim at issue in *Miller*). Moreover, while a district court concluded that *East River* did not bar a negligent failure to warn claim in *McConnell v. Caterpillar Tractor Co.*, 646 F.Supp. 1520, 1526 (D.N.J.1986), the Third Circuit expressly rejected that holding in *Sea–Land*, 134 F.3d at 156.

3. Ace erroneously cites *Mays Towing* as recognizing a cause of action for negligent failure to warn. While the court in *Mays Towing* allowed the plaintiff to recover on a failure to warn claim for damages to *other property* caused by the defective product, the court did not allow recovery for damages to the defective product itself. 755 F.Supp. at 834.

4. Ace suggests that extending *East River* to consumer transactions does not preclude recovery because Maryland liability law affords recovery where the defect creates a substantial and unreasonable risk of harm or personal injury. (Pl.'s Supp. Mem. Opp. Summ. J. at 3.) This rationale was explicitly rejected by Judge Nickerson in *Reliance,* where he adopted the Supreme Court of Washington's conclusion that "the state's interest in the matter did not outweigh federal interests in the uniformity of maritime laws," and thus the court could not apply Maryland's "risk of harm" rule in the admiralty action. *Reliance,* 1997 WL 714900 at *3 (citing *Stanton,* 866 P.2d at 26) (internal quotation marks omitted). Moreover, Ace's reliance on the "savings to suitors" clause of 28 U.S.C. 1333(1), which allows litigants to bring *in personam* maritime actions in state courts, is misplaced. *See Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222–23, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) ("[T]he 'saving to suitors' clause allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse *Erie*' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.").

motion for summary judgment as to any federal or state express warranty claims.

Whether Ace's implied warranty claims survive depends on whether Maryland or Rhode Island law applies to the contract for the sale of the yacht. As discussed below, while Maryland has expressly abolished the contractual privity requirement for the implied warranty of merchantability, Rhode Island has not.

### i. State Law Implied Warranty of Merchantability

■ It is well established that the contract for the sale of a yacht is a non-maritime contract. *See Flota Maritima Browning de Cuba, Sociadad Anonima v. Snobl,* 363 F.2d 733, 735 (4th Cir.1966) ("[T]he prevailing rule has been that a contract for the sale of a ship is not a maritime contract."); *see also Cary Marine, Inc. v. Motorvessel Papillon,* 872 F.2d 751, 755 (6th Cir.1989); *Richard Bertram & Co. v. Yacht, Wanda,* 447 F.2d 966, 967 (5th Cir.1971). Thus, the court hears Ace's breach of warranty claims pursuant to its diversity jurisdiction. *See East River,* 476 U.S. at 872 n. 7, 106 S.Ct. 2295 ("If the charterers' claims were brought as breach-of-warranty actions, they would not be within the admiralty jurisdiction .... [s]tate law would govern the actions."); *Marshall,* 103 F.Supp.2d at 1112 (noting that because the plaintiff's claims "relate to alleged contracts and warranties regarding the construction and repair of ... [a] yacht, they fall within the province of state law and outside our admiralty jurisdiction"). As a federal court sitting in diversity, the court applies Maryland's choice of law rules.[5] *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

### *Restatement (Second) of Conflict of Laws* § 187(2)

When a contract contains a choice of law provision, Maryland courts apply *Restatement (Second) of Conflict of Laws* § 187(2) (1971), which provides that "[t]he law of the state chosen by the parties to govern their contractual rights will be applied."[6] *See Padco Advisors, Inc. v. Omdahl,* 179 F.Supp.2d 600, 605 (D.Md.2002) (applying § 187(2)). The contract between the Mathews and ECYS (the selling broker) contains a choice of law provision which states that the agreement shall "[b]e construed and interpreted in accordance with ... the substantive and procedural law of the State of SELLING BROKER's principal office." (Def.'s Reply Mem. Ex. B at 4.) While Ace disputes this location (*see* Pl.'s Supp. Mem. Opp. Summ. J. at 5 & Ex. 2), the evidence demonstrates that ECYS's principal office is located in Portsmouth, Rhode Island (*see* Def.'s Reply Mem. Ex. A at 1; Def.'s Supp. Mem. Ex. B). Thus, at first blush it appears that Rhode Island law controls the contract.[7]

---

5. In their pleadings, the parties analyze these claims pursuant to federal choice of law rules and apply the "most significant relationship test," as laid out in *Restatement (Second) of Conflict of Laws* § 188(2) (1971). Courts, acting pursuant to admiralty jurisdiction and applying federal choice of law rules, have applied the § 188(2) factors to determine which state's substantive law governed a maritime contract. *See American Home Assur. Co. v. L & L Marine Serv., Inc.,* 153 F.3d 616, 618–19 (8th Cir.1998). Because the allegedly breached warranties stem from a non-maritime contract, however, the court will apply Maryland choice of law rules.

6. Even if the court were applying federal choice of law rules, *Restatement (Second) of Conflict of Laws* § 188(2) calls for an application of the "most significant relationship test" only "in the absence of an effective choice of law by the parties."

7. In the absence of a choice of law provision, Maryland courts look to where the contract was formed, or *lex loci contractus,* which is determined by where the "last act necessary" to form the contract took place. *Rouse Co. v. Fed. Ins. Co.,* 991 F.Supp. 460, 462 (D.Md. 1998). The final signing of a contract often constitutes the "last act." *See Keco Indus.,*

Section 187(2) allows for two exceptions:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

As to the first exception, Rhode Island bears a substantial relationship to the transaction because ECYS, the listing and selling broker, is located in Rhode Island; the Mathews inspected and surveyed the yacht while it was moored in Rhode Island; the parties closed on the purchase of the yacht in Rhode Island; and the Mathews assumed possession of the yacht in Rhode Island. Moreover, Grand Banks contends that the Mathews benefitted from purchasing the yacht in Rhode Island by avoiding the payment of sales tax (Mot. for Summ. J. at 3–4), a contention that Ace does not dispute.[8]

As to the second exception, the court considers: (1) whether applying Rhode Island law would conflict with a fundamental policy of Maryland; (2) whether Maryland has a materially greater interest than Rhode Island in determining the issue; and (3) whether Maryland law would apply pursuant to Restatement (Second) of Conflict of Laws § 188.

### Fundamental Policy of Maryland

■ It is undisputed that Maryland offers broad protections to consumers. Specifically, Maryland has expressly abolished the requirement for contractual privity to sue for breach of the implied warranty of merchantability, Md.Code Ann., Com. Law 2–314(1)(b) ("Any previous requirement of privity is abolished as between the buyer and the seller in any action brought by the buyer."), while Rhode Island has not, see R.I. Gen. Laws § 6A–2–314. "[M]erely because Maryland law is dissimilar to the law of another jurisdiction," however, "does not render the latter contrary to Maryland public policy and thus unenforceable in our courts. Rather, for another state's law to be unenforceable, there must be a strong public policy against its enforcement in Maryland." Nat'l Glass, Inc. v. J.C. Penney Props., Inc., 336 Md.

Inc. v. ACF Indus., Inc., 316 F.2d 513, 514 (4th Cir.1963) (concluding that signing and posting of purchase order in Maryland constituted final acceptance and, therefore, place of contracting was Maryland); Padco, 179 F.Supp.2d at 605 (noting that Maryland is where the last act necessary to form the contract occurred because the agreement was signed in Maryland). Ace contends that the contract was formed in Maryland because that is where the Mathews signed the purchase and sale agreement on September 20, 2005. Grand Banks claims that Rhode Island is the situs of the contract because the purchase and sale agreement required the Mathews to accept the yacht in writing for the sale to take effect, and the Mathews signed the acceptance—an addendum to the original contract—in Rhode Island on October 12, 2005. Given that the acceptance of the yacht

was a condition of the purchase and sale agreement and that the Mathews signed the addendum in Rhode Island, the last act taken by the Mathews was in Rhode Island and, not as Ace claims, in Maryland. There is no evidence in the record suggesting where the seller of the yacht signed the addendum, which required signatures of both the buyer and the seller to become effective. While it is thus unclear where the "last act" took place in forming the contract, there is no evidence to suggest that it occurred in Maryland, particularly considering that at the time of the sale the seller resided in Florida.

8. At the November 12, 2008, hearing, Ace argued that the Mathews would have to pay a Maryland user tax to be assessed on the yacht at a later date.

606, 650 A.2d 246, 249 (1994) (internal quotation marks omitted).

In *National Glass*, the Maryland Court of Appeals concluded that applying the choice of law provision, which would have permitted the parties to waive a right to claim a mechanic's lien, ran contrary to Maryland's strong public policy. Under Maryland law, parties to a contract could not waive this right, and the court pointed to an amendment of the Maryland Code that "[a]ny provision of a contract made in violation of this section is void as against the public policy of this State." *Id.* at 250 (quoting Md.Code Ann., Real Prop. § 9–113(c)). Thus, the court found that applying contrary law would violate a fundamental policy of Maryland. *Id.*; *see also Bethlehem Steel, Corp. v. G.C. Zarnas & Co., Inc.*, 304 Md. 183, 498 A.2d 605, 608 (1985) (finding, in the context of *lex loci contractus*, a strong public policy of Maryland where the legislature "unequivocally told the Maryland judiciary that [an indemnity clause in a construction contract] 'is void and unenforceable' ... [and] the General Assembly expressly stated that such indemnity provision 'is against public policy' ") (internal citation omitted).

In *Three M Enters., Inc. v. Texas D.A.R. Enters., Inc.*, 368 F.Supp.2d 450 (D.Md.2005), the court relied on *National Glass* in concluding that applying the parties' choice of law would violate Maryland's public policy. *Id.* at 459. In that case, the defendant sought to apply Texas law which did not allow for the same types of franchisee protections provided under Maryland law. The court relied on the Maryland legislature's express intent to protect franchisees and the law's civil enforcement mechanism, which bars a franchisor from requiring a waiver of liability under the statute. Here again, the court found that applying contrary law would violate Maryland's strong public policy, noting that "[l]ike the provision in *National Glass*, the

provision at issue here would have the effect of entirely depriving a plaintiff of a cause of action to which the plaintiff would otherwise be entitled. This is because Texas law does not provide for a comparable private right of action...." *Id.* at 458.

To summarize, courts have found a strong public policy of Maryland where the statutory language or the creation of a private cause of action evinced the legislature's intent to create a strong public policy. Where courts have not found such intent, they have opted to enforce the choice of law provision. *See, e.g., Taylor v. Lotus Dev. Corp.*, 906 F.Supp. 290, 298 (D.Md.1995) (concluding Maryland's Wage Law, which prohibits employers from deducting an employee's wages absent certain specified circumstances, did not constitute a strong public policy of Maryland because the statute did not "contain[ ] language which unambiguously expressed that [its] provisions represented fundamental public policy of the state"). In this case, the statutory text does not "unambiguously express" that the provision represents a strong public policy of Maryland. Moreover, the provision does not create a private cause of action that does not exist in the chosen forum; Rhode Island law provides a cause of action, albeit a more limited one, for breach of the implied warranty of merchantability. Based on these considerations, applying Rhode Island warranty law would not violate a strong public policy of Maryland.

### Materially Greater Interest

■ Even if the court were to find that the implied warranty of merchantability provision represented a fundamental policy of Maryland, for Ace to prevail, it would also have to show that Maryland has a materially greater interest than Rhode Island in determining the issue. While the Mathews are residents of Maryland and Maryland has an interest in protecting its consumers,[9] Rhode Island has a greater

---

**9.** The court notes that while Ace is the Math-

ews's subrogee, the Mathews are not a party

interest in determining the issue because, as discussed below, almost all of the significant points of contact occurred in Rhode Island.

### Most Significant Relationship Test of § 188(2)

■ Finally, pursuant to § 187(2), the court would have to conclude that, in the absence of the choice of law provision, Maryland has the "most significant relationship to the transaction and the parties" based on the following factors: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Restatement (Second) of Conflict of Laws* § 188(1), (2).

According to Grand Banks, the Mathews contacted a Rhode Island broker, ECYS, for the purpose of purchasing a recreational yacht, they traveled to Rhode Island to inspect the yacht, and they retained a yacht surveyor to inspect the yacht while it was moored in Rhode Island. (Def.'s Reply Mem. for Summ. J. Ex. C at 2–3.) Further, the Mathews accepted the yacht, in writing, in Rhode Island and closed on their purchase at ECYS's Portsmouth, Rhode Island office. (Def.'s Supp. Mem. for Summ. J. Ex. 2 at 2.) Moreover, Grand Banks asserts that by purchasing the yacht in Rhode Island, the Mathews were able to take advantage of Rhode Island law, which does not assess sales tax on boat purchases. (Def.'s Reply Mem. for Summ. J. Ex. C at 3.) Thus, according to

Grand Banks, the negotiation, place of performance, place of contracting, and transfer of the subject matter of the contract took place in Rhode Island, and Rhode Island therefore has the most significant relationship to the transaction.

Ace alleges that because the Mathews are Maryland residents, who signed the original purchase and sale agreement in Maryland, and because the damage to the yacht occurred while the Mathews were en route to Maryland, Maryland has the most significant relationship to the transaction and the parties. (Pl.'s Opp. Mem. to Summ. J. at 5.) Moreover, Ace contends that Rhode Island does not have a significant relationship to the contract because the yacht was not built in Rhode Island, the defective manufacture did not occur in Rhode Island, the seller of the yacht did not live in Rhode Island, the yacht was only brought to Rhode Island to effect the survey and transfer, and the Mathews made payment to the seller in Florida. (*Id.*; Pl.'s Answer to Mot. to Dismiss at 9–10.) [10]

Considering that the Mathews traveled to Rhode Island on at least two occasions, first to inspect the yacht and then to accept in writing, close on, and take possession of the yacht; that ECYS is a Rhode Island broker; and that the Mathews likely benefitted from Rhode Island tax law by purchasing the yacht in Rhode Island, the court concludes that Rhode Island has the most significant relationship to the transaction. While the Mathews are residents of Maryland and signed the original purchase agreement in Maryland, these

---

to the litigation. *See American Home,* 153 F.3d at 619 (concluding that because the insured was not a party to the litigation, its place of residence was not significant in the court's choice of law analysis).

**10.** At the November 12, 2008, hearing, Grand Banks contended, and Ace did not dispute,

that the Mathews's down payment and subsequent payments on the yacht were made to ECYS at its Rhode Island office. The court notes that neither of the Mathews has been deposed in this case, and the majority of Ace's allegations are made without reference to outside evidence.

contacts are insufficient to override the significant contacts that occurred in Rhode Island. Moreover, since a Maryland party is not seeking the benefit of Maryland's law, the final Restatement factor does not support the application of Maryland law. *See American Home,* 153 F.3d at 619–20 (concluding Missouri's interest was limited since there was no Missouri resident seeking the protection of Missouri law).

### Application of Rhode Island Warranty Law

 In Rhode Island, where the plaintiff claims only economic loss, there generally can be "no recovery based upon a breach of implied warranty ... without first alleging and establishing privity of contract." *Lombardi v. Ca. Packing Sales Co.,* 83 R.I. 51, 112 A.2d 701, 702 (1955); *see also Klimas v. Int'l Tel. & Tel. Corp.,* 297 F.Supp. 937, 939–40 (D.R.I.1969) (recognizing that the statutory implied warranty of merchantability requires contractual privity between plaintiff and manufacturer); *Henry v. John W. Eshelman & Sons,* 99 R.I. 518, 209 A.2d 46, 49–50 (1965) (holding that plaintiff farmer could not sue chicken feed manufacturer for breach of implied warranties without alleging privity).[11] It is undisputed that the Mathews neither purchased the yacht directly from Grand Banks nor had any contractual relationship with Grand Banks. Thus, pursuant to Rhode Island law, the absence of contractual privity between the Mathews and Grand Banks defeats Ace's claim for breach of the implied warranty of merchantability. Grand Banks's motion for summary judgment will be granted.

### ii. Magnuson–Moss Warranty Act Claim

 Magnuson–Moss provides federal remedies for a consumer damaged by a supplier's failure to comply with written or implied warranties. 15 U.S.C. § 2310(d)(1). As discussed above, there is no written warranty related to the transaction at issue in this litigation. The statute defines "implied warranty" as "an implied warranty arising under State law," 15 U.S.C. § 2301(7), and whether privity is required to state a claim for breach of an implied warranty under the federal law depends on the applicable state law. *Voelker v. Porsche Cars North Am., Inc.,* 353 F.3d 516, 525 (7th Cir.2003) (citing *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1014 (D.C.Cir.1986); *Abraham v. Volkswagen of Am., Inc.,* 795 F.2d 238, 249 (2d Cir.1986)); *see also Carlson v. Gen. Motors Corp.,* 883 F.2d 287, 291 (4th Cir.1989) (citing *Walsh* and *Abraham* for proposition that except where expressly modified, Congress intended the application of state law in Magnuson–Moss breach of warranty actions). Thus, because Rhode Island law applies, the absence of contractual privity between the Mathews and Grand Banks defeats Ace's Magnuson–Moss implied warranty claim. Grand Banks's motion for summary judgment will be granted.

A separate Order follows.

---

**11.** Ace's reliance on *Finocchiaro v. Ward Baking Co.,* 104 R.I. 5, 241 A.2d 619 (1968) for the proposition that Rhode Island does not require privity of contract for a plaintiff to recover under the implied warranty of merchantability is misplaced. In *Finocchiaro,* a purchaser of bread sued the manufacturer for a breach of the implied warranty that foodstuffs be "reasonably fit for human consumption," codified at R.I. Gen. Laws § 6A–2–315. The Supreme Court of Rhode Island distinguished that warranty from the general rule requiring privity because the legislature amended the text of the warranty to extend from manufacturers to third party beneficiaries. *See id.* at 621–22. Because the legislature has not amended Rhode Island's implied warranty of merchantability to extend from manufacturers to third party beneficiaries, *see* R.I. Gen. Laws § 6A–2–314, that warranty continues to require contractual privity.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. The defendants' motion for summary judgment (docket entry no. 16) is **GRANTED;** and

2. The Clerk shall **CLOSE** this case.